Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8674 | **DATE** | 9/24/2002 |
| **CASE TITLE** | Federal Deposit Insurance vs. David J. Wabick, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. FDIC's remaining claims - - advanced in Sac Count I (breach of contract) and Count III (unjust enrichment) - - were untimely pursued for the reasons stated here. Those two counts are therefore also dismissed (this order involves the granting of all defendants' pending motions to dismiss - - Dkt. 27-1, 28-1, 29-2 and 36-1). Hence this entire action has been and is dismissed on limitations grounds, making it unnecessary to address defendants' other possible bases for dismissal.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 25 2002 | |
| | Docketing to mail notices. | | date docketed | 45 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 9/24/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | 02 SEP 25 PM 4:00 | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEDERAL DEPOSIT INSURANCE )
CORPORATION, etc., )
)
Plaintiff, )
)
v. ) No. 01 C 8674
)
DAVID J. WABICK, et al., )
)
Defendants. )

MEMORANDUM OPINION AND ORDER

This Court's August 2, 2002 memorandum opinion and order ("Opinion," 2002 WL 1781128[1]) dealt in painstaking--some might say excruciating--detail with the issue of timeliness of this lawsuit, brought by Federal Deposit Insurance Corporation ("FDIC") some nine years after the events forming the gravamen of its claims. Because the timeliness question was thus so obvious as figuratively to leap off the pages of FDIC's Second Amended Complaint ("SAC"), this Court had ordered the parties to address the subject, and they had responded with extensive written memoranda--on FDIC's part, a separate five-page February 1, 2002 memorandum, 16 pages of its 26-page May 8 response to defendants' motions to dismiss the SAC and then a four-page July 15 memorandum.

This Court, justifiably viewing the parties as having

---

[1] Because the current Westlaw printout mysteriously contains no * pagination as well as understandably omitting any citations to the yet-to-be-published F.Supp.2d version, all page references here are to the slip Opinion.

exhausted the subject, addressed their respective arguments and concluded (Opinion at 7-8) that the special limitations period prescribed by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA")--12 U.S.C. §1821(d)(14)(A) ("Section 1821(d)(14)(A)")--controlled. Indeed, all parties had agreed that FIRREA governed FDIC's claims (Opinion at 7).[2] And the Opinion's extended ensuing analysis led to the ultimate conclusion that the SAC Count II (common law fraud) and Count IV (conspiracy to commit fraud) claims had, under any permissible view of the facts, become stale (Opinion at 12-15, 20-21).

As to the SAC Count I (breach of contract) and Count III (unjust enrichment) claims, even though this lawsuit had been filed well past the expiration of the time specified by the

---

[2] More than that, the parties had agreed not only as to FIRREA's general applicability, but more specifically that its limitations provisions controlled here. Here is what this Court said in its brief July 3, 2002 order that directed both sides to provide supplemental filings to address a decision that neither side had spoken to:

> Both sides agree that FDIC's claims are governed by the limitations period specified in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"): the longer of (1) six years for contract actions and three years for tort actions and (2) "the period applicable under State law" (12 U.S.C. §1821(d)(14)(A)). FDIC contends that Illinois' choice-of-law rules properly determine which state provides the alternative limitations period under FIRREA, while defendants counter that federal common law determines the choice-of-law rule used to answer that question.

FDIC's July 15 memorandum did not dispute that in any respect.

FIRREA clock, questions still remained as to whether the application of the discovery rule could have deferred the ticking of that time clock. Accordingly the Opinion concluded by allowing FDIC the opportunity to address the merits of its opponents' supplemental arguments on that facet of the problem (Opinion at 26-27).

On August 26--right on time--FDIC filed a memorandum that was quite frankly astonishing. <u>For the first time</u> it contended that the FIRREA statute of limitations did not alone provide the rule of decision, but that this Court should instead also address the <u>general</u> statutes of limitation applicable to lawsuits by a federal agency, 28 U.S.C. §§2415 and 2416.[3] Such a total change of position in the face of FDIC's three previous memoranda, not one of which had contained even a hint of the purported applicability of those generalized provisions, smacks somewhat of the same type of litigation conduct that triggers application of the "mend the hold" doctrine to preclude the later assertion of a new legal position (see, e.g., cases cited in <u>United States v. Newell</u>, 239 F.3d 917, 922 (7th Cir. 2001)). But leaving aside any such technical grounds for potentially dispatching FDIC's belated effort to rescue a long-belated lawsuit, that effort

---

[3] Those statutes will also be cited here as "Section --," without further reference to Title 28. No confusion should result, given the substantial difference in section numbering between those provisions and the FIRREA limitations provision.

fails dismally in several substantive respects (any one of which would alone justify spurning FDIC's lame contention).

To begin with, it is fundamental to statutory construction that "a more specific statute will be given precedence over a more general one" (see, e.g., Mosley v. Moran, 798 F.2d 182, 186 (7th Cir. 1986)(per curiam), quoting as its ultimate source Busic v. United States, 446 U.S. 398, 406 (1980)). And although Busic, id. announced that proposition is applicable "regardless of their temporal sequence," the principle obviously applies with even greater force when the more specific statute is enacted later. Indeed, Section 2415(a) itself contemplated that Congress might enact another limitations period to supersede its general rule in specific situations--it expressly specified that its provisions would apply "except as otherwise provided by Congress." And Congress did precisely that by enacting FIRREA, including its special limitations period, over a quarter century later.

In partial response to FDIC's shift in position, defendants have pointed to the decision in RTC[4] v. Aycock, No. 92-0761, 1993 WL 534127, at *2 (E.D. La. Dec. 14)(citations--including Busic-- and quotation of Section 2415 omitted):

---

[4] As FDIC's just-tendered further amendment to the SAC sets out, RTC was FDIC's predecessor in interest in the transactions at issue here. That amendment, submitted in response to this Court's September 6, 2002 order, is treated as part of the SAC to which defendants' motions to dismiss and this opinion have addressed themselves.

4

> Prior to the enactment of FIRREA, the applicable statute of limitations was unquestionably that contained in section 2415. The question presented by this case is whether that statute has any application in light of the specific limitations provisions contained in FIRREA. The Court concludes that FIRREA provides the exclusive statute of limitations applicable to the RTC's claims. First, FIRREA was enacted more than twenty years after the enactment of section 2415. Had Congress wished to give the RTC the benefit of that section it was certainly able to do so. Instead it chose to enact a specific statute of limitations for FIRREA claims. Allowing the RTC to mix and match section 2415 and FIRREA would undermine the Congressional scheme.
>
> Second, section 2415 is simply the general statute of limitations applicable to tort claims by the United States. FIRREA is a more specific statute dealing with the management of the affairs of insolvent banks and thrifts and should be applied to the instant claim. Section 2415 clearly was not intended to apply to claims for which Congress has enacted specific limitations periods. Rather, Congress intended section 2415 to provide the limitation period for claims, brought by the United States, in the absence of a controlling federal statute. By enacting 12 U.S.C. §1821(d)(14)(a) Congress effectively preempted section 2415 in its entirety, with respect to claims arising under FIRREA.

Even though it is non-precedential (as is true of every District Court opinion), that statement seems a convincing application of the universal principle of looking to the specific rather than to the general where statutes are at issue (in that respect, cf. RTC v. Seale, 13 F.3d 850, 854 (5th Cir. 1994)).

For its part, FDIC seeks to invoke the decision in SMS Fin., L.L.C. v. ABCO Homes, Inc., 167 F.3d 235 (5th Cir. 1999), which did cobble together a combination of a specific tolling provision of Section 2415(a)--not the tolling period under Section

5

2416--and the specific limitation period prescribed by FIRREA's Section 1821(d)(14)(see 167 F.3d at 240-42). With all respect, this Court does not find that the analysis in SMS Fin. really establishes the propriety of that combination--and it is worth observing that the issue was presented to the court there in all-or-nothing terms: to choose either (1) the combination that it ultimately selected or (2) Section 1821(d)(14) without any potential for its extension because of special circumstances. In sharp contrast, Opinion at 21-27 has viewed the matter in terms of applying the federal discovery rule to extend the literal FIRREA statutory time limit--a principle that is consistently applied in federal jurisprudence.

So the alternatives to be considered here are really quite different:

    1. the FIRREA statute (acknowledged as applicable by both sides), together with the federal common law of tolling under discovery principles, or

    2. the FIRREA statute plus a wholly separate statute (Section 2416), which is made applicable by its own express terms to a preempted statute (Section 2415) and not to the FIRREA legislation as such.

In those terms this Court unhesitatingly opts for the former as better supported by both logic and the principles of statutory construction.

But suppose instead that FDIC's less tenable position were to be accepted. Its counsel then proceed to engage in an impermissible sleight of hand, inserting a nonexistent and more demanding term into Section 2416 to distort its standard for tolling. Here is the portion of Section 2416 that FDIC would seek to invoke:

> For the purpose of computing the limitations periods established in Section 2415, there shall be excluded all periods during which--
>
> &ast; &ast; &ast;
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances....

But in FDIC's hands that becomes transformed in this fashion (in its current Mem. 3, emphasis added):

> By contrast, under Section 2416(c) the cause of action accrues only when an official of the FDIC with responsibility for acting had actual or constructive knowledge of <u>all</u> of the facts that are material to its claims.

That strained reading is not supported by the caselaw, including FDIC's reference to <u>Phillips Petroleum Co. v. Lujan</u>, 4 F.3d 858 (10th Cir. 1993). That case itself speaks of the government's burden, once it is in possession of facts that put it on notice of a claim, in terms wholly consonant with the general federal discovery rule (4 F.3d at 863):

> Clearly, the government should not be able to postpone litigation due to a lack of efficiency or diligence on its part. The legislative history in support of

7

§2415(a) indicates Congress was motivated in part by
notions of fairness and equity in government dealings
with private litigants, and further motivated to reduce
the costs of record keeping and encourage prompt agency
actions on claims. S.Rep. No. 2438, 89th Cong.2d Sess.
reprinted in 1966 U.S.C.C.A.N. 2502, 2503, 2513.

\* \* \*

To satisfy Congressional intent, district courts should
not view a failure to exercise reasonable diligence,
inconvenience, and even some hardship on the part of
government as grounds for tolling the limitations
period. We agree with the Eleventh Circuit which said
"Congress could not...be completely forgiving of
government delay and still be true to its motives in
enacting a statute of limitations." [United States
v.]Kass, 740 F.2d [1493,] 1497 [(11th Cir. 1984)].

That approach tracks precisely with our own Court of Appeals' explanation of the common law discovery rule in United States v. Duke, 229 F.3d 627, 630 (7th Cir. 2000)(emphasis in original):

The federal common law rule on when a statute of
limitations begins to run is that it is when the
plaintiff discovers, or by exercise of due diligence
would have discovered, that he has been injured and who
caused the injury.

\* \* \*

The discovery rule does not permit the victim of an
alleged wrong to postpone the running of the statute of
limitations by willfully closing his eyes, ostrich-
like, to a known probability that he has been injured,
even if he is not certain. A plaintiff who either knew
that he was injured or should have known is deemed to
have "discovered" the injury for purposes of the
statute of limitations.

When the relevant standard is denuded of FDIC's gratuitously-injected and misleading "all material facts" requirement in favor of the actual statutory language, the input

8

that was communicated to RTC's Contractor Ethics Program Manager Martin Blumenthal ("Blumenthal") during his July 20, 1994 meeting with FBI and Department of Justice representatives fits the standard admirably. Blumenthal's August 21, 2002 Declaration (Ex. A to FDIC's most recent August 26 memorandum) acknowledges his having been interviewed by those law enforcement personnel on the subjects referred to in Opinion 23-24. Although the Declaration is strangely silent on the subjects addressed during that interview, they are undisputed--and there can be no question that the interview had to alert Blumenthal (especially given his role as the Contractor <u>Ethics</u> Program Manager) in a way that had to trigger the commencement of the discovery time clock (or alternatively put an end to any tolling period under Section 2416(c)). And neither Blumenthal nor FDIC is dug out of that hole by his lame assertion (Declaration ¶8) that, even though he had the <u>authority</u> to communicate that information to RTC's Office of Inspector General ("OIG"), he failed to do so because he "assumed that the OIG already knew about the matters discussed in the interview" (Declaration ¶9). That essentially equates to someone failing to cry "Fire!" because of the assumption that someone else has heard an alarm.

Despite all of that, FDIC (which does not and cannot of course dispute the facts that it has itself adduced) attempts to urge an impermissibly crabbed compartmentalization of what it

means to bring knowledge home to the government. But defendants are correct in analogizing the situation to that posed in United States v. Boeing Co., 845 F.2d 476, 482 (4th Cir. 1988), rev'd on other grounds, 494 U.S. 152 (1990). Like the agency there, which had knowledge of impropriety but failed to pass that knowledge along to the Department of Defense, Blumenthal had not only the authority but the responsibility to apprise the OIG of the information conveyed to him. And that scotches FDIC's effort to permit the government to play ostrich.

In sum, then, FDIC must fail in its efforts to take itself out of the corner into which the Blumenthal meeting far back in mid-1994 has painted it, whether the situation is examined in terms of the federal common law rule of discovery or in terms of Section 2416(c)(when properly read). Either way, the FIRREA time clock began to tick at a sufficiently early date so that this 2001 lawsuit came too late to advance FDIC's breach of contract and unjust enrichment claims.

## Conclusion

FDIC's remaining claims--advanced in SAC Count I (breach of contract) and Count III (unjust enrichment)--were untimely pursued for the reasons stated here. Those two counts are therefore also dismissed (this order involves the granting of all defendants' pending motions to dismiss--Dkt. 27-1, 28-1, 29-2 and

10

36-1[5]).  Hence this entire action has been and is dismissed on limitations grounds, making it unnecessary to address defendants' other possible bases for dismissal.

_____
Milton I. Shadur
Senior United States District Judge

Date:  September 24, 2002

---

[5] Wabick defendants' motion to strike (Dkt. 29-1), included in their motion to dismiss, is denied as moot.