# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8674 | **DATE** | 9/8/2004 |
| **CASE TITLE** | FDIC vs. Wabick, et. al. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, Lawrence Ettner and Janelle Ettner's omnibus motion to dismiss the second amended complaint is granted in part and denied in part. Plaintiff's fraud claims and breach of contract claim against Janelle are dismissed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | SEP 9 -- 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | 74 |
| | Copy to judge/magistrate judge. | | | | |
| | MF | courtroom deputy's initials | 2004 SEP -8 PM 3:16 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE FEDERAL DEPOSIT INSURANCE, CORPORATION, as Successor to the Resolution Trust Corporation, as Receiver for the Home Federal Savings Association of Kansas City, F.A., and as Manager of the FSLIC Resolution Fund, | ) ) ) ) ) ) ) | **DOCKETED**<br>SEP 9 2004 |
| Plaintiff, | ) ) | |
| v. | ) ) | **No: 01 C 8674** |
| DAVID J. WABICK, PATRICIA A. WABICK, LAWRENCE ETTNER, JANELLE ETTNER, LORRAINE WABICK, and PAUL FREITAG, | ) ) ) ) | **Judge John W. Darrah** |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Federal Deposit Insurance Corporation, filed suit against several Defendants,

including Lawrence Ettner and Janelle Ettner. Plaintiff alleges Defendants delivered false

documents which enabled an otherwise unqualified corporation to participate in a bidding

process and purchase of certain loans. Plaintiff also alleges Defendants colluded with the then-

owner of the loans to depress the bid price. Based on these actions, Plaintiff brings claims for

fraud, breach of contract, and unjust enrichment against Defendants. Presently before the Court

is Lawrence Ettner and Janelle Ettner's Omnibus Motion to Dismiss the Second Amended

Complaint. For the following reasons, that motion is granted in part and denied in part.

74

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiff's Second Amended Complaint. Defendants David Wabick and Larry Ettner formed Gateway Capital. Together, Larry Ettner and his wife, Janelle Ettner, owned half of Gateway Capital; however, Gateway Capital was an alter-ego of David Wabick and Larry Ettner. Furthermore, Janelle Ettner took her direction as a shareholder in Gateway Capital from David Wabick and Larry Ettner, and thus acted as David Wabick's agent in this regard. David Wabick also controlled or owned another corporation, Connaught.

The Resolution Trust Corporation was a United States corporation charged with protecting creditors and depositors of failed savings and loan institutions.[1] When one of these institutions was declared insolvent, the Resolution Trust Corporation was appointed as conservator or receiver. Consistent with its obligations, the Resolution Trust Corporation liquidated assets of failed savings and loan institutions at public auctions.

To ensure that all potential bidders in the auctions operated with the same information, the Resolution Trust Corporation adopted certain policies and procedures, such as requiring prospective bidders, as prerequisites to bidding, to complete a Confidentiality Agreement and a Deposit Agreement. In these agreements, all prospective bidders of assets gave, on their own behalf and on behalf of their representatives, several certifications to the Resolution Trust Corporation, including: (1) a certification that the signer would not disclose to any third party any confidential information without prior written consent of the Resolution Trust Corporation; and (2) a certification that the signer would not communicate with any debtor, guarantor, or debtor's or guarantor's accountant or attorney relative to any asset without prior written consent of the Resolution Trust Corporation.

In addition, the Resolution Trust Corporation adopted a number of eligibility requirements to prevent assets controlled by the Resolution Trust Corporation from being won at auction by those who had caused losses to the insurance funds or who were otherwise unsuitable purchasers. All prospective bidders were required to complete and submit a "Collection Policy Certification" as a prerequisite to participation. This certification required all purchasers to

---

[1] The Resolution Trust Corporation was abolished on December 31, 1995. At that time, Plaintiff statutorily succeeded the Resolution Trust Corporation in all of its receivership and conservatorship capacities.

certify on their own behalf and on behalf of all their affiliates that: (1) no defaults, by the

prospective purchasers or its affiliates, existed on any obligation to the Resolution Trust

Corporation or other certain federal corporations involved with insuring savings and loan

institutions; and (2) a certification that no litigation existed between the prospective purchaser

and the Resolution Trust Corporation or other certain federal corporations involved with insuring

savings and loan institutions.

One group of loans the Resolution Trust Corporation auctioned off was the Merit Loans.

The lender on the Merit Loans was declared insolvent, and the Resolution Trust Corporation was

appointed its receiver. Merit Corporation, Merit Holding Corporation, and Trison Corporation

(collectively, the "Merit Entities") were either debtors or controlled the debtors on some or all of

the Merit Loans. Albert Ichelson, Jr. controlled or owned each of the Merit Entities.

Before the auction, all prospective bidders received a bid package, including: (1) an

explanation of the Collection Policy Certification, (2) copies of the certification forms described

above, (3) a Credit History and Legal Record Statement, (4) instructions for completing the

forms and the Credit History, and (5) the Confidentiality Agreement and the Deposit Agreement.

Delivery of these forms was a prerequisite to participate in the auction.

Gateway Capital intended to bid on the Merit Loans. Defendants, as detailed below,

made a number of misrepresentations on various forms prepared so that Gateway Capital could

bid on the Merit Loans, including: (1) the Confidentiality Agreements, (2) the Deposit

Agreements, (3) the Collection Policy Certifications, (4) the Credit Histories, (5) a Purchase

Agreement, and (6) an affidavit.

On September 4, 1992, in anticipation of participation in the auction, Defendant David Wabick, on behalf of Gateway Capital, signed: (1) a Confidentiality Agreement and agreed not to communicate with nor disclose confidential information to any debtor whose loan was contained in the Merit Loans package; (2) a Deposit Agreement in which David Wabick certified that Gateway Capital had no known material business relationship with any obligor under any mortgage loan contained in the Merit Loans package; and (3) the requisite Collection Policy Certification. These items were sent to the Resolution Trust Corporation.

Included in these documents were certifications that: (1) no default existed with respect to any obligation of Gateway Capital or its affiliates to the Resolution Trust Corporation or other certain federal corporations involved with insuring savings and loan institutions; and (2) Gateway Capital was not purchasing assets on behalf of or for resale to a restricted purchaser.

Gateway Capital, Defendant Patricia A. Wabick, and Larry Ettner signed Credit Histories dated September 4, 1992; October 19, 1992; and October 20, 1992, respectively. On October 21, 1992, the Collection Policy Certification was signed on behalf of Gateway Capital in Illinois. These documents were sent to the company the Resolution Trust Corporation hired to investigate the Credit Histories of the prospective bidders.

The signers of the Credit Histories represented that neither they nor any related entity had: (1) any outstanding judgments; (2) filed for bankruptcy or been declared bankrupt in the preceding ten years; (3) owned property which had been foreclosed or given title or deed in lieu thereof in the preceding seven years; (4) been in default on any obligations to pay principal or interest to any credit institution, including the Resolution Trust Corporation or other certain

5

federal corporations involved with insuring savings and loan institutions; and (5) been a party to any pending lawsuit at the time the Credit Histories were executed.

While Gateway Capital was preparing the required materials for its bid, Wabick also sent a fax to the Resolution Trust Corporation receiver. This fax contained a signed affidavit from David Wabick stating that prior to receiving the bid package and executing the Confidentiality Agreement and the Deposit Agreement, Gateway Capital had entered into discussions with Ichelson regarding the Merit Loans. Wabick further certified that after executing these documents, Gateway Capital had no further discussions with any borrowers, including Ichelson, and had not disclosed confidential information to any borrowers or their agents relating to the Merit Loans.

Thereafter, Gateway Capital was informed that it was the highest bidder on the Merit Loans. Before Gateway Capital was designated as the successful bidder, the Resolution Trust Corporation requested that Gateway Capital execute another Confidentiality Agreement and Deposit Agreement re-certifying that Gateway Capital had no contact with any borrowers, nor had Gateway Capital disclosed confidential information to any borrowers relating to the Merit Loans.

Gateway Capital was then declared the successful bidder, and it executed a Purchase Agreement for the loans. In the Purchase Agreement, Gateway Capital again certified that it had complied with all the terms and conditions of the Confidentiality Agreement. Gateway Capital also specifically represented and warranted to the Resolution Trust Corporation that as of the date of the agreement, and continuing through closing, neither Gateway Capital nor any of its

affiliates was an ineligible purchaser under the existing policies of the Resolution Trust Corporation.

However, as noted above, the representations made in the required certifications, Credit Histories, and other documents filed in connection with the Merit Loans were false. For a variety of reasons, Connaught was ineligible to bid at the auction. David Wabick knew that Connaught was not qualified to bid at the auction and that his affiliation with Connaught would prevent Gateway Capital from being eligible to bid at the auction. The misrepresentations made in connection with the Merit Loans helped to conceal David Wabick's interest in Connaught.

In addition, David Wabick negotiated with Ichelson and the Merit Entities transactions regarding the Merit Loans. David Wabick entered these negotiations so that Gateway Capital would be the successful bidder in the auction because Ichelson would: (1) provide Gateway Capital with information concerning the Merit Loans that was not contained in the bid package, and (2) cause some of the Merit Entities to file bankruptcy prior to the auction to make the Merit Loans less attractive to other bidders.

Because of these alleged misrepresentations, Gateway Capital was able to purchase assets at the auction it could not have otherwise purchased. Subsequently, the profits from the sales of those assets were then distributed to, among others, Larry Ettner and Janelle Ettner.

## ANALYSIS

The Ettners seek to dismiss the fraud counts, the breach of contract count, and the unjust enrichment count. According to the Ettners, Plaintiff has not properly alleged a claim for fraud in accordance with Federal Rule of Civil Procedure 9. The Ettners also contend that Plaintiff has not properly alleged a claim for breach of contract, nor is there any legal basis to hold Janelle

7

Ettner liable for a breach of contract. The Ettners further argue that the unjust enrichment count should be dismissed because it is mutually exclusive to the Plaintiff's contract claim, and Plaintiff fails to state a claim for unjust enrichment. Finally, Defendants argue that Plaintiff has not properly alleged its measure of damages.

*Fraud Claims*

The Ettners seek to dismiss Count II and IV, the fraud claims, of Plaintiff's Second Amended Complaint. According to the Ettners, Plaintiff did not plead the fraud claims with the particularity needed under Federal Rule of Civil Procedure 9(b). Specifically, the Ettners contend that: (1) many of the allegations supporting the fraud claims are not pled with particularity; (2) fraud allegations pled based on "information and belief" are not permissible; and (3) Plaintiff has not alleged the Ettners knew David Wabick was affiliated with a company that would prevent Gateway Capital from bidding on the loans in question. Janelle Ettner also argues that no good faith basis exists demonstrating that she participated in any fraud.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "While this does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (*Bankers Trust*)).

8

"The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

The Ettners are correct in arguing that allegations of fraud pled on "information and belief" are generally not permissible. *See Bankers Trust*, 959 F.2d at 683-84. However, the requirement in Rule 9(b) does not mean Plaintiff must "plead facts showing the representation is indeed false." *Bankers Trust*, 959 F.2d at 683.

Here, Plaintiff has met the applicable pleading standard with respect to Larry Ettner. As detailed above, Plaintiff has identified numerous alleged misrepresentations made by the Defendants, including Larry Ettner, in this case. These alleged misrepresentations, which were not pled based on "information and belief," include statements made by Defendants in Confidentiality Agreements, Deposit Agreements, an affidavit, certifications in the Purchase Agreement, and Credit Histories. As detailed above, Plaintiff has pled who made the alleged misrepresentations, when the alleged misrepresentations were made, and where the alleged misrepresentations were made. Larry Ettner argues that many of Plaintiff's allegations which were pled on "information and belief" cannot be used to support the fraud claim. Specifically, Larry Ettner points to three allegations which they claim are insufficient under Rule 9(b): (1) that David Wabick and Larry Ettner met with Ichelson to discuss the Merit Loans; (2) that

David Wabick and Larry Ettner controlled Gateway Capital, while Wabick controlled Connaught; and (3) that Larry Ettner knew certain representations were false. However, all of the fraud allegations, considered as a whole, demonstrate that the representations made in connection with the Merit Loans were false and further provide Defendants with a general outline of the fraud and Defendants' participation therein.

Larry Ettner next argues that no allegations exist demonstrating that they knew David Wabick was affiliated with Connaught and that Connaught, and therefore Gateway Capital, was ineligible to bid at the auction. According to Larry Ettner, Plaintiff only states that Larry Ettner "agreed to the execution of false and misleading documents designed to conceal that Wabick was in control of Connaught," but none of these documents references Connaught. Larry Ettner also contends that this allegation only states that they executed the documents, but that he did not know the documents were false. However, it can be reasonably inferred that Larry Ettner knew the documents were false when the documents were executed.

Based on these allegations, Plaintiff has properly stated a claim for fraud against Larry Ettner.

Janelle Ettner correctly contends that there is no basis to allege she participated in the alleged fraud and that no allegations exist demonstrating that she executed a document containing misrepresentations. In response, Plaintiff states that a claim for fraud can be stated by showing Janelle Ettner "accept[ed] the fruits of fraud knowing of the means by which they were obtained." *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *17 (N.D. Ill. Apr. 28, 2003) (citations omitted). However, there are no allegations which meet the requirements of Federal Rule of Civil Procedure 9, stating that Janelle Ettner knew about the

10

fraud, accepted the fruits of the fraud, or participated in the fraud. Therefore, the fraud claims with respect to Janelle Ettner are denied.

*Breach of Contract Claim*

The Ettners next contend Plaintiff's breach of contract claim should be dismissed for two reasons. First, Plaintiff "has failed to allege a single fact in support of its legal conclusion that Larry Ettner was the alter ego of Gateway Capital." (Defs.' Mot. at 2). Second, Plaintiff "cannot impose individual liability against Janelle Ettner as an alleged agent of David Wabick." (Defs.' Mot. at 2).

With respect to Larry Ettner, Plaintiff alleges that Gateway Capital breached its contract, the Purchase Agreement, by falsely certifying documents. Plaintiff also alleges that Larry Ettner acted as Gateway Capital's "alter ego" in this regard and, therefore, Gateway Capital's corporate veil should be pierced and liability for the breach of contract should be imposed upon Larry Ettner. Pursuant to Federal Rule of Civil Procedure 8, Plaintiff need not allege facts in support of this allegation. Accordingly, Plaintiff has properly stated a claim for breach of contract against Larry Ettner.

With respect to Janelle Ettner, Plaintiff alleges that she actively participated in the breach of contract. Plaintiff further alleges that Janelle Ettner was David Wabick's agent for the purpose of concealing his interest in Gateway Capital. Thus, through agency relationships, Janelle Ettner should be liable for the alleged breach of contract.

However, in contract cases, "an agent may not be held personally liable for a breach of contract by . . . her principal when the agent has disclosed the fact that . . . she is acting on behalf of the principal." *Strzelecki v. Shwartz Paper Co.*, 824 F. Supp. 821, 829 (N.D. Ill. 1993)

(citations omitted) (*Strzelecki*). This proposition also applies when the agent actively

participated in breaching the contract. *Strzelecki*, 824 F. Supp. at 829. Plaintiff offers no

arguments to the contrary. Therefore, Plaintiff's breach of contract claim against Janelle Ettner is

dismissed.

## Unjust Enrichment

The Ettners also argue that Plaintiff's claim for unjust enrichment should be dismissed.

Specifically, the Ettners contend that the unjust enrichment claim "is an equitable claim that is

mutually exclusive to [Plaintiff's] contract claim." (Defs.' Mot. at 2). The Ettners also contend

that Plaintiff "has failed to plead two essential elements for an unjust enrichment claim – namely,

that the [Resolution Trust Corporation] conferred a benefit on the Ettners and that the Ettners

received a benefit to the detriment of the [Resolution Trust Corporation] or" Plaintiff. (Defs.'

Mot. at 2).

However, the Federal Rules of Civil Procedure permit parties to plead alternative and

inconsistent claims, including claims for a breach of contract and unjust enrichment. Fed. R.

Civ. P. 8(e)(2); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *6 (N.D. Ill.

Jan. 22, 2002) (*Lilly*). Thus, although Plaintiff cannot recover on the breach of contract claim

and the unjust enrichment claim, Plaintiff may plead both causes of action.

The Ettners also contend that they did not receive a benefit directly from the Resolution

Trust Corporation and cannot be liable under an unjust enrichment theory; instead, the Ettners

contend that any benefits they received came from a third party, Gateway Capital. However,

Plaintiff may recover the benefit in situations where "the plaintiff is seeking recovery of a benefit

that was transferred to the defendant [here, the Ettners] by a third party [here, Gateway Capital]"

12

if "the plaintiff for some other reason had a better claim to the benefit than the defendant." *See*

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (*HPI*

*Health Care*).

Here, Plaintiff alleges that the Ettners engaged in multiple improper actions to ensure

Gateway Capital received a benefit. Plaintiff also alleges that Gateway Capital transferred part of

this benefit to the Ettners. Because of the Ettners' alleged improper actions, Plaintiff would have

a superior claim to the benefit than the Ettners' claim.

The Ettners further argue that Plaintiff failed to allege the proper measure of damages for

the unjust enrichment claim. According to the Ettners, the Resolution Trust Corporation was

going to sell the loans in question to the highest bidder. As a result, Plaintiff's damages would

be limited to the amount the Resolution Trust Corporation would have sold the loans to another

purchaser minus the amount Gateway Capital paid for the loans. The Ettners thus contend that

Plaintiff's remedy of disgorgement of any profits made by the Ettners from the loan is

inapplicable; and, therefore, Plaintiff has not properly pled a claim for unjust enrichment. *See*

*Rowe v. Maremont*, 850 F.2d 1226, 1241 (7th Cir. 1988) (*Rowe*).

However, as noted above, the Ettners concede that some measure of damages are

available. Furthermore, "[i]t is within the district court's discretion to determine whether

disgorgement or some other damage measure is appropriate." *Rowe*, 850 F.2d at 1240 (citation

omitted). The proper determination of damages is an inquiry not suited for resolution on a

motion to dismiss.

Based on the above, Plaintiff has properly stated a claim for unjust enrichment against the

Ettners.

13

*Damages*

Lastly, the Ettners assert Plaintiff's measure of damages is speculative and based on conjecture, and Plaintiff's Second Amended Complaint should be dismissed in its entirety. However, Plaintiff need not allege its damages with specificity at the pleading stage. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 229 (7th Cir. 1993).

## CONCLUSION

For the foregoing reasons, Lawrence Ettner and Janelle Ettner's Omnibus Motion to Dismiss the Second Amended Complaint is granted in part and denied in part. Plaintiff's fraud claims and breach of contract claim against Janelle Ettner are dismissed.

Dated: September 8, 2004

JOHN W. DARRAH
United States District Judge